Martin, J.
The first question for determination is raised by the demurrer to the plea to the jurisdiction. Did the court err in overruling the demurrer ?
Sec. 5031 Rev. Stat. provides that actions must be brought in the county where the defendant or one of the defendants resides or may be summoned. C. B. Thompson, the principal maker of the notes, resided and was summoned in Ross county, where the action was brought. The other defen' dants resided and were summoned in Pickaway county. The question is, was C. B. Thompson a defendant within the meaning of the above section. We readily accede to the claim that the statute contemplates a party having a substantial interest adverse to the plaintiff. And that jurisdiction cannot be conferred by a device such as naming a nominal defendant against whom no judgment could be rendered. It is insisted he was such nominal party. The plea shows that prior to the commencement of this action, proceedings m bankruptcy had been duly instituted against him, and *318 were still pending, and that the notes sued on were provable claims, but had not been proved.
It is claimed that Sec. 5106 (Rev. Stat. U. S.) forbids the commen.cem.ent of an action against the bankrupt by a creditor of a provable claim.
The material part of that section is this:
Sec. 5106. “ No creditor whose debt is provable, shall be allowed to prosecute to final judgment any suit at law or in equity therefor, against the bankrupt, until the question of the debtor’s discharge shall have been determined; any such suit or proceedings shall, upon the application of the bankrupt, be stayed to await the determination of the court in bankruptcy on the question of the discharge.”
The inhibition of this section is against the prosecution of a suit to final judgment whilst the question of his discharge remains undetermined. If that question is finally adjudged against him, the suit may be prosecuted to judgment on its merits. It certainly was not the object of the statute to deprive creditors of the advantages, frequently important, resulting from the commencement of an action during the pendency of the proceedings in bankruptcy. The policy of this section may require restraint to the extent of preventing a useless and purely vexatious suit. In an action on the several obligations of the bankrupt, it may be requisite that the record show some special reason for the institution of the suit, or permission of the court in bankruptcy to commence it, which would imply a satisfactory reason.
Here, the claim sued on is joint, to which a joint judgment is proper, unless at the time of the judgment some of the defendants are discharged. This fact is, in our opinion, a justification for bringing the suit. And a stay of further proceedings ensures to the bankrupt all the advantages contemplated by that section.
At the commencement of the action it could not be said that judgment could not be obtained against C. B. Thompson. As principal maker and defendant he was a substantial party in interest; and it follows that the sureties were properly before the court.
*319 The next question involves the merits of the case. Did the alteration avoid the notes as to the sureties ?
In Wallace v. Jewell, 21 Ohio St., 163, White, J., says: “It is a general rule of the law that the unauthorized material alteration of a written instrument by the holder, or with his consent, vitiates it as to non-consenting parties. The policy of the rule is to preserve the integrity of legal instruments by taking away the temptation of tampering with them.” In other well considered cases, the reason, or one of the reasons given for the rule is, that the identity of the instrument is destroyed, and as altered, it is not the obligation signed by the non-consenting party. Patterson v. McNeely, 16 Ohio St., 348; Berry v. Railway Co., 26 Id., 573 ; Harsh v. Klepper, 28 Id., 200.
In the case under consideration the alteration was by adding to the notes after delivery a stipulation for an increased rate of interest, and was confessedly material. It was made by the principal maker, and Thomas Massie, one of the joint payees, who was the custodian of the notes. But it was done without the knowledge or consent either of the sureties or the other payees. The latter claim that as to them and to the extent of their alleged equitable interest in, or proportion of the amount of the notes, the instruments are unimpaired by the alteration, and maybe enforced against the sureties. And it seems to be conceded that as to Thomas Massie and any separable interest he may have the sureties are discharged.
If this alteration had been made by a stranger, the law in this country would reject it, and enforce the notes according to their original terms. Such an alteration is regarded as a mere spoliation and parol evidence is admissible to ascertain the true terms of the contract. And thus the identity of the instrument is preserved and full effect given to it.
But the alteration in this case was not made by a stranger, but by parties to the instrument — one of whom had a beneficial interest in it.
In Williams v. Van Tuyl, 2 Ohio St., 337, the general rule is enunciated that a material alteration made by a party *320 beneficially interested in the instrument avoids it. This rule is also announced in many adjudicated cases, and is commonly quoted and adopted in the text-books without qualification. We do not say it is of universal application. If each of these notes had specified the aliquot shares of the payees respectively, the question might possibly be somewhat varied.
In this case, however, the instrument is a promissory note in common form. The promise is to the payees jointly. They had each the right to its custody, to receive its amount and to release the debt. And whether the alteration under consideration is to be regarded as a mere spoliation, depends on the question as to whether it may consistently with legal principles be rejected and the identity of the original obligation preserved. If this cannot be done the case falls within the rule of material alteration, supported by the policy and reasons already indicated. As between the maker and payee, who made the alteration, it was an effective act. And the sureties it is clear were not bound by it. It cannot be rescinded and the parties to it restored to their original rights against the sureties. Brandt on Suretyship, 331. We cannot therefore regard it as a mere spoliation. On the contrary it is a material change in the terms of the contract made without the assent of the sureties. And being effective and beyond recall, the sureties may well say the notes thus altered they did not sign. It will be borne in mind that the judgment was in favor of the sureties against Thomas Massie, thus recognizing the effectiveness of the alteration. It was against the sureties and in favor of the other payees for an alleged equitable portion of the debt. It seems to us that to affirm this judgment would be equivalent to declaring good in law a petition against the sureties by a part only of the payees, founded solely on the hardship inflicted on them by the act of their co-payee, and in which the sureties had no participation. Indeed the claim is made in argument that in equity the proportionate shares of the debt should ■ be adjudged against the sureties. This claim is inconsistent with a surviving legal obligation in the notes. *321 As against sureties there is no consideration to fall back upon in lieu of the original formal undertaking. And they pi ay stand strictly on its terms.
In State v. Medary, 17 Ohio, 565, it is said by Judge Read, “ There is no construction, no equity against sureties. If the bond cannot have effect according to its exact words, the law does not' authorize the court to give it effect in some other way.”
This view renders unnecessary any comment on the other errors assigned.

Judgment reversed.